UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

ANNA M. WHITLEY,

    Plaintiff,

*vs.*

CAROLYN W. COLVIN, Commissioner of Social Security,

    Defendant.

CAUSE NO. 1:13-cv-695-DKL-JMS

## ENTRY

The plaintiff, Anna M. Whitley, applied for disability-insurance benefits under the Social Security Act based on a disability commencing in June 2009. The defendant, the Commissioner of Social Security, finally denied her application and Ms. Whitley filed this suit for judicial review of her denial.

## Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758

(7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 905. A person will be determined to be disabled only if her impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(a)(3)(G).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an

4

administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. ▪ 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

Ms. Whitley applied for benefits in September 2010. Her claim was denied on initial and reconsideration reviews and she requested a hearing before an ALJ. The hearing was held in March 2012. Ms. Whitley testified, as did a medical expert[2] and a vocational expert. Eight days later, the ALJ issued his decision denying Ms. Whitley's claim. In February 2013, the Appeals Council denied Ms. Whitley request for it to review the decision, which rendered the ALJ's decision the final decision of the Commissioner on her claim and the decision that the Court reviews.

At step one of the sequential evaluation process, the ALJ found that, because Ms. Whitley had engaged in substantial gainful activity in 2009 and 2010, a finding of disability was precluded for those years. (As noted, she alleged a disability-onset date of

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (▪ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

[2] Laura M. Rosch, D.O., board-certified in internal medicine with primary practice specialties in osteopathic and internal medicine.

June 2009.) However, he found that she had a continuous period of twelve months after 2010 when she did not engage in substantial gainful activity and evaluated her application for that time period. He found that she met the insured status requirements for disability-insurance benefits through December 31, 2012. Ms. Whitley does not challenge any of these findings.

At step two, the ALJ found that Ms. Whitley suffers from the following severe impairments: **(1)** arteriovenous malformation (AVM) with loss of peripheral vision; **(2)** chronic headaches and seizures; **(3)** carpal tunnel syndrome; **(4)** lumbago with back pain; **(5)** asthma; **(6)** gastroesophagael reflux disease; **(7)** weight loss; **(8)** major depressive disorder; and **(9)** post-traumatic-stress disorder. Ms. Whitley does not challenge this finding. At step three, the ALJ found that none of these severe impairments, alone or in combination with other severe and non-severe impairments, meet or medically equal any of the listings of impairments. Ms. Whitley does not contend that any of her impairments satisfy the listings. (*Plaintiff's Reply* [doc. 25] at 3.)

For steps four and five, the ALJ determined Ms. Whitley's residual functional capacity ("RFC"). He found that she retained the ability to do sedentary work with additional postural and environmental restrictions. At step four, the ALJ found that this RFC prevents the performance of her past relevant work. At step five, the ALJ relied on the testimony of the vocational expert to find that significant number of jobs exist in the national economy that Ms. Whitley can perform and that she is, therefore, not disabled.

**Discussion**

Ms. Whitley presents three categories of arguments for reversing the ALJ's decision.

**1. Failure to consider evidence of arteriovenous malformation and chronic back pain.** Ms. Whitley states generally that the ALJ ignored or arbitrarily rejected substantial evidence that proved that she is disabled due to her two impairments of (1) arteriovenous malformation ("AVM"), resulting in chronic disabling headaches, and (2) chronic back pain, due to compression of her S-1 nerve root. She narrows this general, conclusory assertion to three main arguments.

    **a. Nerve root compression.** Ms. Whitley contends that, in finding that her chronic low back pain did not satisfy listing 1.04 because of the lack of evidence of compromise or compression of a nerve root, the ALJ ignored a physician's evaluation of a 2011 lumbar MRI as showing "some S1 nerve root compression." (*Plaintiff's Brief* at 12.) As noted, Ms. Whitley does not contend that she satisfies the listing; rather, she points to the ALJ's listing finding as evidence that he ignored the 2011 expert finding of nerve root compression, which he should have considered in his evaluation of whether she was totally disabled due to her chronic back pain, resulting, at least in part, from the S-1 nerve-root compression. (*Plaintiff's Reply* at 3.) Ms. Whitley is mistaken that the ALJ's listing explanation shows that he ignored the 2011 evidence of her nerve-root compression, or that he even found that evidence of nerve-root compression was absent.

Listing 1.04, disorders of the spine, has the following criteria:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, 1.04A. In his listings discussion, the ALJ wrote:

> I evaluated the claimant's lumbago using the criteria of Listing 1.04. However, there is no medical evidence of a disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerate disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with [1] evidence of nerve root compression, [2] spinal arachnoiditis, or [3] lumbar spinal stenosis, resulting in an inability to ambulate effectively. Moreover, there is no evidence of an inability to ambulate effectively. Therefore, this impairment does not meet or medically equal the criteria of Listing 1.04.

(R. 40-41 (footnotes omitted) (brackets added, each bracket denoting a paragraph of listing 1.04).) Thus, in finding that listing 1.04 was not satisfied, the ALJ did not specify that there was no evidence of nerve-root compression. Neither the ALJ nor Ms. Whitley refers to any diagnosis or finding of herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerate disc disease, facet arthritis, or vertebral fracture in the record, and Ms. Whitley does not argue that the record contains a diagnosis of any other disorder of the spine in the record that would make the ALJ's quoted explanation a necessary finding that the record contains no evidence of nerve-root compression. Ms. Whitley acknowledges that, in a different part of his decision, the ALJ specifically mentioned the 2011 MRI that was interpreted as showing mild S1 nerve-root compression, (*Plaintiff's Reply* at 3; R. 44), and the Court notes that the ALJ mentioned it a second time, (R. 45 ("While her lumbar MRI showed mild nerve root compression, her gait [was] within normal limts and there is no evidence of aggressive treatment measures, such [as] physical therapy, a TENs unit, or surgical intervention . . . .").) Thus, the ALJ's listing 1.04 finding is no evidence that he ignored the 2011 evidence of nerve-root compression.

**b. Ignored evidence.** Next Ms. Whitley's counsel presents his usual litany of evidence that the ALJ "ignored" to support his standard argument that the ALJ only selectively considered the record evidence. What Ms. Whitley means by the ALJ "ignoring" the cited evidence is that he did not mention it in his decision. But an ALJ is not required to mention or articulate his evaluation of every item of evidence or every

9

part of every item of evidence. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) ("In reaching its decision, the ALJ 'must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence.'" (citation omitted)). Ms. Whitley offers no explanation — in the context of the record as a whole, the evidence addressed by the ALJ, and the ALJ's findings — why the particular pieces of evidence that she cites had such significance that they required explicit address by the ALJ and the Court will not evaluate the evidence to make that argument for her. On summary review, it is apparent that the evidence she cites consists largely of her complaints of symptoms and evidence of conditions and medical signs that the ALJ otherwise acknowledged, addressed, and/or accepted in his decision. Ms. Whitley has not shown that the ALJ erred by not evaluating every part of every piece of evidence that she lists.

    **c. Headaches evaluation.** Ms. Whitley contends that the ALJ erroneously found that "[t]he record shows that her headaches responded well with her use of Gabapentin . . . ." (R. 44.) She argues that he erred because he failed to cite any evidence in support of the finding and because it is contrary to a note by her primary-care physician that she was "[s]till having a lot of pain." (*Plaintiff's Brief* at 15; R. 495.) Plaintiff is mistaken about the lack of citation: the ALJ cited Exhibit 16F in support of his statement regarding the effectiveness of Gabapentin on Ms. Whitley's headaches. (R. 44.) However, that statement is only one of two findings in the compound sentence to which the citation is attached, and there does not appear to be any mention in Exhibit 16F of the efficacy of Gabapentin on Ms. Whitley's headaches.

However, the ALJ appears simply to have mistaken his citation because, on page five of Exhibit 11F, (R. 454), which is a neurology progress note of a follow-up examination, Dr. Bustion writes: "The use of gabapentin and nonsteroidal anti-inflammatory mediation has resulted in significant pain relief. She has been able to pursue daily activities." This January 19, 2011 examination was following up on a visit the previous month (December 20, 2010) in the report of which Dr. Bustian wrote that Ms. Whitley "has a history of migraine headaches and chronic daily headaches, which have responded some to nonsteroidal anti-inflammatory medication," (R. 451), and that he started Ms. Whitley on a trial of Gabapentin. (R. 452.)

Ms. Whitley is correct that, on March 7, 2011, two months after her neurology follow-up with Dr. Bustian, she had a general follow-up visit with her primary-care physician who noted: "Chronic headaches: neurologist started gabapentin. She quit sertraline and desipramine. Still having a lot of pain. [T]aking maxalt prn. Needs follow up from neurology."[3] (R. 495.) This does conflict with Ms. Whitley's report two months earlier to Dr. Bustian that she was obtaining "significant pain relief" with Gabapentin, which allowed her to undertake daily activities. It was the ALJ's prerogative to resolve

---

[3] Mathew, Nina T., *et al.*, "Efficacy of Gabapentin in Migraine Prophylaxis" 41(2) *Headache* 119-28 (Feb. 2001) (from abstract: "Conclusion.—Gabapentin is an effective prophylactic agent for patients with migraine. In addition, gabapentin appears generally well tolerated with mild to moderate somnolence and dizziness."), available at: http://onlinelibrary.wiley.com/doi/10.1046/j.1526-4610.2001.111006119.x/full (visited Sept. 28, 2014).

11

any inconsistency between these two reports by Ms. Whitley. She has not shown that the ALJ's resolution is not supported by substantial evidence in the record.

    **d. Lack of supportive objective medical evidence.** Ms. Whitley asserts that "[t]he ALJ appears to have rejected her allegations of disabling headaches and back and leg pain because of a supposed lack of supporting objective medical evidence." (*Plaintiff's Brief* at 15-16.) She relies solely on the following statement in the ALJ's decision: "Overall, despite the claimant's allegations of numerous symptoms, I do not find the longitudinal record supportive of her alleged symptoms at the frequency and severity she alleges." (*Id.* at 16; R. 45.) There is nothing in this statement that indicates that the ALJ rejected Ms. Whitley's allegations because of a lack of supporting objective medical evidence. The assertion is disingenuous and does not merit further discussion.

    **2. Erroneous credibility determination.** Ms. Whitley makes four arguments against the ALJ's credibility determination, none of which are remotely effective.

    **a. Lack of objective medical evidence.** Here, Ms. Whitley repeats her assertion that the ALJ rejected her "allegations of disability because supposedly not supported by the objective evidence . . .", (*Plaintiff's Brief* at 18), but she offers nothing new under this heading and her assertion and argument are accordingly rejected for the same reason.

    **b. Boilerplate and backwards procedure.** Relying on *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), Ms. Whitley argues that the ALJ used "boilerplate" credibility language and determined her RFC before determining her credibility, which is

12

backwards; the credibility of a claimant's allegations must be considered in the determination of her RFC. *Bjornson* criticizes two aspects of ALJs' use of the credibility boilerplate or template. First, it rejects the boilerplate as a credibility finding when it is unaccompanied by any analysis or evaluation of the record evidence and the claimant's allegations against the standard for determining credibility. *Id.* at 645. Second, it criticizes the placement of the boilerplate statement of an ALJ's RFC conclusion before his analysis of a claimant's credibility because it "implies that the determination of credibility is deferred until ability to work [RFC] is assessed without regard to credibility, even though it often can't be." *Id.* at 645-46.

In this case, it is undisputed that the ALJ undertook a thorough analysis and evaluation of the record evidence and Ms. Whitley's allegations of symptoms and limitations in order to determine her credibility and her RFC. (R. 43-48.) The ALJ did not simply recite the boilerplate as his sole credibility discussion, but provided a detailed explanation of his reasons for finding that Ms. Whitley's allegations were not entirely credible, explicitly according to the factors of S.S.R. 96-7p. The errors that *Bjornson* fears in the use of the boilerplate or "backwards reasoning" do not obtain in this case. The Court of Appeals for the Seventh Circuit has declared, since *Bjornson*, that reversal is not necessary if the ALJ adequately explains his findings. *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012) ("In *Bjornson*, this flaw required us to reverse and remand, but that is not always necessary. If the ALJ has otherwise explained his conclusion adequately, the

13

inclusion of this language can be harmless. Here, the ALJ did offer reasons grounded in the evidence, and so we can proceed to examine them.").

Ms. Whitley has not shown that the ALJ committed error in his use of the particular language that she cites.[4]

**c. Perfunctory, failure to cite evidence, intentional vagueness, and refusal to disclose reasoning.** Finally, Ms. Whitley offers a grab-bag of reasons to reverse an ALJ's decision and evidently hopes that the Court will pull out one or two and construct arguments to apply them to the ALJ's decision in this case. The Court declines the invitation. The only support she offers is for her "perfunctory" reason. She asserts that the ALJ's credibility determination should be reversed because it is perfunctory and, as sole support, she quotes portions of two sentences supposedly from the ALJ's decision that the Court did not find in the ALJ's decision and for which she cites an electrocardiographic interpretation report, (R. 15), and a "Problem List" from her primary-care physician's practice, (R. 307). (*Plaintiff's Brief* at 20.) None of these conclusory assertions are developed arguments, are forfeited, and do not merit any additional attention.

---

[4] In the midst of her argument on this point, Ms. Whitley includes the following sentence: "Applied to the instant case the ALJ thus rejected the claimant's statements describing her residual impairments from her mental impairments that met or equaled Listing 12.05C." (*Plaintiff's Brief* at 20.) As noted above, Ms. Whitley denied in her reply that she argues that she satisfies a listing. If this sentence is intended, nonetheless, to be a listings argument, then it is fatally undeveloped. Any other meaning to this sentence is obscure to the point of invisibility.

**3. Step-five determination.** Ms. Whitley's final "argument" merits no more attention. She argues: "The ALJ's hypothetical questions to the vocational expert failed to consider the claimant's allegations of total disability due to her chronic headaches and back/leg pain which significantly limited her ability to function. These allegations were fully corroborated by the evidence ignored by the ALJ, as specified above." (*Plaintiff's Brief* at 22.) There follow two paragraphs of descriptions of caselaw that, according to Ms. Whitley, reversed decisions where ALJs failed to consider all of claimants' impairments or their subjective complaints. To the extent that Ms. Whitley is merely repeating her earlier arguments, they are rejected for the same reasons given above. To the extent that Ms. Whitley is attempting to make a new argument, it is not discernable, certainly undeveloped, and, therefore, forfeited.

## Conclusion

Ms. Whitley has failed to show that the ALJ's decision is unsupported by substantial evidence or that the ALJ committed legal error. Accordingly, judgment shall issue affirming the Commissioner's decision.

**DONE this date: 09/29/2014**

_Denise K. LaRue_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.